UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
PAUL W. GRIMM
CHIEF UNITED STATES MAGISTRATE JUDGE

101 W. LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-4560
(410) 962-3630 FAX

July 19, 2012

Frederick A. Raab, Esq.
Mignini & Raab, LLP
606 Baltimore Avenue, Suite 100
Towson, MD  21204

Alex S. Gordon, AUSA
36 South Charles Street
4th Floor
Baltimore, MD  21201

**Re: Kimberly Ashcraft v. Michael J. Astrue, Commissioner of Social Security, PWG-10-3425**

Dear Counsel:

Pending before the undersigned, by the parties' consent, are Cross-Motions for Summary Judgment concerning the Commissioner's decision denying Ms. Ashcraft's claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (ECF Nos. 8, 11, 13). Plaintiff also filed a response to Defendant's Motion (ECF No. 14). This Court must uphold the Commissioner's decision if it is supported by substantial evidence and if proper legal standards were employed. 42 U.S.C. § 405(g); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). A hearing is unnecessary. Local Rule 105.6. For the reasons that follow, this Court DENIES the Commissioner's Motion and GRANTS the Plaintiff's Alternative Motion for Remand.

Kimberly A. Ashcraft (sometimes referred to as "Ms. Ashcraft", "Claimant" or "Plaintiff") applied for DIB and SSI on September 14, 2007, alleging that she was disabled as of January 1, 2007, due to reflex sympathetic dystrophy syndrome ("RSDS"), bipolar disorder, carpal tunnel syndrome, and degenerative arthritis. (Tr. 12, 95, 130). Her claims were denied initially, and upon reconsideration. (Tr. 46-55). After a hearing held before Administrative Law Judge Barbara Powell ("ALJ"), on June 17, 2009, the ALJ denied Ms. Ashcraft's claims and concluded in a decision dated July 22, 2009, that she suffered from an

affective disorder and carpal tunnel syndrome, and that they were "severe" impairments, as defined in the Regulations. The ALJ also found that these impairments did not meet or equal any of the Listing of Impairments ("LOI").  The ALJ next found Ms. Ashcraft retained the residual functional capacity ("RFC") to perform a range of medium work.  Based on her RFC, the ALJ found that Ms. Ashcraft was precluded from performing her past relevant work ("PRW").  After receiving testimony from a vocational expert ("VE"), the ALJ found that there were jobs available in the national and local economies, existing in substantial numbers, which Ms. Ashcraft could perform.[2] Accordingly, the ALJ found Ms. Ashcraft was not disabled. (Tr. 11-19). On April 22, 2010, the Appeals Council denied Claimant's request for review, making her case ready for judicial review. (Tr. 5-7).

Claimant argues that the ALJ failed properly to consider whether her RSDS and associated pain was severe.  She also contends that the ALJ erred in determining her mental RFC and in finding that there was work she could perform.  As explained below, I am persuaded by Claimant's arguments and conclude that the ALJ's decision is not supported by substantial evidence, and therefore I will DENY the Commissioner's Motion and will GRANT the Plaintiff's Alternative Motion for Remand.

In 2007 Claimant was diagnosed with Reflex Sympathetic Dystrophy Syndrome.  RSDS is "a rare disorder of the sympathetic nervous system that is characterized by chronic, severe pain. The skin over the affected area may become swollen and inflamed. The exact cause of RSDS is not fully understood, although it may be associated with injury to the nerves." *Reflex Sympathetic Dystrophy Syndrome,* WebMD, http://www.webmd.com/brain/reflex-sympathetic-dystrophy-syndrome (last visited July 10, 2012).

Claimant asserts that the ALJ failed properly to consider whether her RSDS was a severe impairment at step two of the five step sequential evaluation, and failed to follow Social Security Ruling "SSR" 03-02p, which expressly explains how to evaluate claims involving RSDS.

---

[2] The ALJ found Ms. Ashcraft could perform work as an order taker, a store laborer, a copy machine operator, and a price marker. (Tr. 18).

SSR 03-2p states relevantly:

Claims in which the individual alleges RSDS/CRPS are adjudicated using the sequential evaluation process, just as for any other impairment. Because finding that RSDS/CRPS is a medically determinable impairment requires the presence of chronic pain and one or more clinically documented signs of the affected region, the adjudicator can reliably find that pain is an expected symptom in this disorder. Given that a variety of symptoms can be associated with RSDS/CRPS, once the disorder has been established as a medically determinable impairment, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionality limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

SSR 03-2p, 2003 WL 22399117, at *7-8 (2003).

An impairment is not severe if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience. *Evans v. Heckler*, 734 F.2d 1012, 1014 (4th Cir. 1984). At step two of the sequential evaluation, finding Claimant's RSDS was not a severe impairment the ALJ stated only "her reflex sympathetic dystrophy does not cause more than a minimal effect on her ability to perform basic work related activities." (Tr. 13.) However, the ALJ failed to discuss how she considered evidence contained in the record, which included evidence which supports a finding that Claimant's RSDS was a severe impairment. For example, in 2007, Claimant's treating physician, Dr. Glenn Arzadon, diagnosed Ms. Ashcraft with RSDS and prescribed Tegretol for her pain. (Tr. 260). In 2008, Dr. Arzadon stated that Claimant's RSDS had been present since 1983, and that due to the pain and paresthesis in her right hand, Ms. Ashcraft could lift no more than 20 pounds occasionally and 10 pounds frequently. (Tr. 261).

3

Preliminarily, the ALJ incorrectly stated that Ms. Ashcraft had been diagnosed with RSDS in 2008. (Cf. Tr. 16, 260). Additionally, the record contains medical evidence from Dr. Arazadon dated 2007 and 2008 which supports a finding that Claimant's RSDS constituted a severe impairment but the ALJ failed to discuss this evidence at step two of the sequential evaluation. This was improper in light of SSR 03-2p, which requires all evidence in the case record to be considered when determing whetehr RDSD is a severe impairment. SSR 03-2p, 2003 WL 22399117, at *8 (2003).

Additionally a remand is necessary because the ALJ also erred at step four of the sequential evaluation when evaluating Ms. Ashcraft's mental RFCA. Specifically the ALJ failed to discuss all the relevant evidence in determining Claimant's mental RFC. The ALJ found:

> The Claimant has the residual functional capacity to perform the exertional demands of medium work as defined in 20 CFR §§ 404.15679(c) and 416.967(c). The claimant can lift and carry 25 pounds frequently, 50 pounds occasionally. She can sit and walk for a combined total of 8 hours in an 8-hour day but is limited in her ability to interact appropriately with co-workers and the general public. (Tr. 15).

The ALJ documented her specific findings as to the degree of limitation in each of the four areas of functioning described in paragraphs(c) of §404.1520a, 416.920a.[3] (Tr. 14). However the ALJ's discussion of Ms. Ashcraft's mental limitations at step two was not an RFC assessment,[4] and did not satisfy the ALJ's

---

[3] The ALJ found that Ms. Ashcraft had: "mild" limitation in her activities of daily living; "mild" limitation in social functioning; "moderate" limitation in her ability to concentrate; and that she experienced "no" episodes of decompensation. (Tr. 14).

[4] The Introduction to Listing 12.00 *Mental Disorders*, in relevant part, states: "An assessment of your RFC complements the functional evaluation necessary for paragraphs B and C of the listings by requiring consideration of an expanded list of work related capacities that may be affected by mental disorders when your impairment is severe but neither meets nor is equivalent in severity to a listed mental impairment." *See* 20 CFR Pt. 404, Subpt.P, App. 1; *see also* SSR 96-8p (1996 WL 374184).

duties at step 4 of the sequential evaluation. SSR 96-8p, in relevant part, states as follows:

> [T]he adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria are not an RFC assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process require a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the PRTF. SSR 96-8p (1996 WL 374184, at *4(S.S.A.)).

Surprisingly, the ALJ referenced the above-cited language in her decision. (Tr. 14). However the ALJ's RFC analysis did not include the required detailed findings. Rather, the ALJ stated, that Ms. Ashcraft could perform medium work but was "limited in her ability to interact appropriately with co-workers and the general public." This is not an adequate assessment and does not address all of the evidence which states Ms. Ashcraft has other moderate limitations. For example, the ALJ failed to explain whether, and/or why, she was discrediting the state agency physician's opinion that Ms. Ashcraft had "moderate" limitations in the area of social functioning. The ALJ found Ms. Ashcraft had only "mild" limitations in this area. (Cf. Tr. 14, Tr. 283-285). Equally important, is the ALJ's failure to discuss adequately the Mental Residual Functional Capacity Assessment "MRFCA" completed by the state agency physician, Dr. E. Edmunds. Dr. Edmunds found Claimant had moderate limitations in eleven different areas. *See* Exhibit 10-F (Tr. 108-110). Specifically, he stated that Claimant was "moderately" limited in her abilities to:

1) understand and remember detailed instructions;
2) carry out detailed instructions;
3) maintain attention and concentration for extended periods;
4) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances;

5) work in coordination with or proximity of others without being distracted by them;
6) complete a normal work-day without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and
7) accept instructions and respond appropriately to criticism for supervisors;
8) get along with coworkers or peers without distracting them or exhibiting behavioral extremes;
9) maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness;
10) respond appropriately to changes in the work setting; and
11) set realistic goals or make plans independently of others.

(Tr. 283-284).

The RFC assessment always must consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted. SSR 96-8p (1996 WL 374184, at *7) (S.S.A.)). All limits on work related activities resulting from the mental impairment must be described in the mental RFC assessment. SSR 85-16 *Residual Functional Capacity for Mental Impairments* (1985 WL 56855, *2) (S.S.A.)). The ALJ never discussed Dr. Edmunds' MRFCA except to state in a conclusory fashion, that Exhibit 10-F was "persuasive in that Claimant is able to perform some type of work." (Tr. 17). Because Dr. Edmunds' MRFCA was not properly discussed by the ALJ--and since the ALJ did not perform the function-by-function assessment described in SSR 96-8p[5]--the undersigned has no way of knowing whether the ALJ properly considered this evidence and consequently whether this evidence supports, or conflicts with, the ALJ's finding regarding Ms. Ashcraft's RFC and the hypothetical presented to the VE.(Tr. 41-42).

Simply stated, it is not clear from the ALJ's decision whether she properly evaluated all of Ms. Ashcraft's impairments

---

[5] SSR 96-8p, in relevant part, states: Initial failure to consider an individual's ability to perform the specific work-related functions could be critical to the outcome of a case.(1996 WL 374184, *3 (S.S.A.))

6

at the second, fourth, or fifth step of the sequential evaluation. *See Baker v. Chater*, 957 F. Supp. 75, 79 (D. Md. 1996)(in evaluating the severity of mental impairments a special procedure must be followed by the Commissioner at each level of administrative review). Thus, for the reasons given, this Court GRANTS Ms. Ashcraft's Alternative Motion for Remand and DENIES the Commissioner's Motion for Summary Judgment. A separate Order shall issue.

_____/s/_____
Paul W. Grimm
United States Magistrate Judge